## Francis v. Commonwealth.

(Decided Oct. 4, 1935.)

NAPIER & EBLEN for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant, indicted by the Perry county grand jury for the murder of Ruey Gray, on trial was found guilty, and his punishment fixed at confinement in the penitentiary for life. He appeals.

In his motion and grounds for a new trial he claims: (1) That the verdict was flagrantly against the evidence; (2) that since his trial he has discovered new and important evidence; and (3) that the commonwealth's attorney indulged in improper and unfair argument to the jury. In brief for appellant counsel presents and argues only the first complaint.

Since the penalty meted out to appellant is a severe one, we have considered grounds (2) and (3), and find them without merit. The first so because the evidence alleged to be new, undiscovered, and undiscoverable was merely cumulative, and sufficient reason was not shown why it could not have been, by the exercise of diligence, procured and presented. The second ground does not appear to be well founded. The statements made by the prosecuting attorney were such as were inferable from the testimony.

The third ground will necessitate a resume of the evidence adduced against and for the appellant. The homicide occurred shortly after dark on November 22, 1934, at a crossroad village, where George Barlow had a store on one side of the highway, and deceased lived and operated a store on the opposite side. George Barlow, late in the afternoon, called Gray over to his store for the purpose of adjusting a radio, and after he had finished the work, Barlow and deceased went into a room in the rear of the storeroom and began a game of cards.

After they had played a short while, appellant came into the store, walked through and into the room where the card game was in progress, and was invited to and did join in the game. The game progressed, and at one point point in the game an argument arose, and appellant drew in the stake, and Gray raised an objection. There is some disagreement as to the use of language attributed to deceased. In a short time appellant left and shortly thereafter shots were heard, and when several persons arrived at the scene, deceased was found lying in the road, dying or dead. As to his position and the surrounding circumstances, there is a contrariety of proof.

George Barlow says that after Gray fixed his radio they went into the room in the rear of the store and began to play "five-up," at a quarter a game. After 5 o'clock appellant came in and was invited to play; the game changed to "rummy," still at a quarter a game. Accused took his pistol out and all of them looked at it. Gray said, "I have two pistols like that." Accused put the pistol on the bed and the game proceeded until the argument came up on accused's claim that he held a winning hand, and reached for the stake. Barlow said, "You're not out," and Gray said, "You can't win on treys," and deceased got his gun from the bed and said, "I'll pistol with you," to which Gray, to whom the remark appeared to have been addressed, replied, "I know you are a big man, but you are not any badder than I am," at which point Barlow says he gave Gray his quarter, and upon being urged to continue the game said, "No, I'm going home." Witness says that accused left immediately, and in one or two minutes after he got out of the house two shots were heard, which sounded like fire crackers.

The accused, testifying for himself agrees that the card game was in progress as detailed by Barlow; he says that he had won the stake and reached for it when Gray said, "You can't take my money," and accused replied, "Well I am out," and jumped up. At this point witness says he got his pistol off the bed; Gray was still arguing and using abusive language, addressed to accused and Barlow, and said, "I'll go to the house and get my gun and kill every damn one of you sons-of-bitches," and left, and accused went out to his car, which was parked next to the porch at Barlow's store. He got in the car and laid his pistol in the seat, reached

in his pocket, got his switch key and was trying to get it into the switch lock when some one, whom he did not know, pushed a gun into his side and said, with an oath, "I've got you now." Accused said he grabbed the gun, pushed his assailant off and about that time, "his gun fired and mine fired. I shot twice." Accused then stepped out of his car, went into Barlow's store and asked for a light to enable him to find his switch key. Not procuring a light, he left his car and ran, or walked rapidly down the road leading to Glomawr. He says he left because he feared some danger to him.

In testifying for accused, one witness corroborates him to some extent. He says he saw Gray come out of Barlow's place, go across the road to his store and residence, go on to the steps, "reached around in the house and came back out." He says he had something which looked like a gun, and went across the road, and understood Gray to tell accused to turn his lights out or he would shoot. He heard three shots, one before accused jumped out of the car and fired his two shots. He could not see just what happened, because accused got out of the car on the side away from witness. There is quite a difference in his story and that of appellant, who says he shot while in the car, and had not turned on his switch.

Other portions of the testimony for accused go to the question as to whether there were two or three shots fired. Some say two; some say three. Accused says he shot twice, and an examination of the body of deceased showed two distinct bullet holes, about one inch and a half apart, the points of entrance being in the back just at the lower part of the left shoulder blade.

Circumstances as bearing on the guilt or innocence of the accused may be noted as follows: Several witnesses who testified, placed the body of Gray some distance from the car, the distances varying from 7 or 8 to 15 feet. One witness who "stepped it off," puts it about 21 feet away. The gun, a twenty-two rifle, was lying 4 or 5 feet from the body. Several witnesses examined the rifle and were emphatic in their assertions that it had not been recently fired. Others testified that the four or five unexploded shells found in the magazine would not pass from the magazine into the firing chamber. They were twenty-two longs, whereas the

rifle was constructed for twenty-two shorts, though one witness says he had used longs in the rifle. The witnesses who say there were only two shots fired, say they were fired close together; that they sounded like fire crackers, or like shots from a forty-five pistol.

The widow of deceased testified that she was at home the night of the homicide; that George Barlow called deceased over to his place two hours before the homicide; that Gray did not come back to the house after he left to go to Barlows; that she saw him leave Barlows, and heard the shooting and went to see what had happened. She also says she did not see the shots fired, and of course could not say who fired them. Another witness, who was at Gray's home with his wife, says that Gray did not come home after he went over to repair Barlow's radio. She does not testify to any facts as to the shooting, or as to seeing Gray leave Barlows.

On the testimony presented, we are called upon to decide whether or not the verdict of the jury is flagrantly against the evidence. Where the evidence in some respects is conflicting, and where a portion is circumstantial, this court has always held that though some of the evidence is circumstantial, as opposed to other evidence which may be direct and positive, such situation presents no sufficient ground to overturn the verdict of a jury, nor to justify us in concluding that the direct evidence should outweigh circumstantial evidence. Guilt may be, and is in many cases shown by circumstances alone, always to be considered when the effect is greater than to create a mere suspicion or conjecture. Such evidence is in many instances more persuasive and satisfactory than is positive evidence. Stephens v. Com., 196 Ky. 86, 244 S. W. 301. A jury in the exercise of its discretion has full right to accept the one class and reject the other. Wendling v. Com., 143 Ky. 587, 137 S. W. 205; Daniels v. Com., 194 Ky. 513, 240 S. W. 67.

The commonwealth proved, and accused admitted the shooting and killing of Gray. Accused produced testimony tending to show excuse for his act. This became an issue for the jury. Simmons v. Com., 207 Ky. 570, 269 S. W. 732. If the testimony of appellant and his chief witness had been accepted as true, the jury

should have excused his act; however, if they accepted the testimony of the commonwealth's witnesses as true, accused was guilty of homicide in some degree. The issues as made by the facts were presented to the jury in well-framed and appropriate instructions, about which no complaint is made. It is true that there appears a threat on the part of the deceased to procure his weapon and kill; that when found dead or dying, a rifle lay near him, and it must be true that he went to his home and procured it, or that it was "planted" by some other person, a theory of the commonwealth not established by proof. These facts, if they were such, are sufficient to create a doubt in the minds of the jury, but after all the jury must resolve whatever doubts may be created by conflicting evidence. The rule in such cases has been frequently laid down by this court, to the effect that a verdict is not palpably against the evidence where it is reasonable for the jury to find from proven facts and circumstances that the defendant was guilty. Deaton v. Com., 211 Ky. 651, 277 S. W. 1001; Burden v. Com., 216 Ky. 787, 288 S. W. 742, both approved in Shepherd v. Com., 236 Ky. 290, 292, 33 S. W. (2d) 4, 6, in which this court said:

> "The credibility of the witnesses must be determined by the jury, and that tribunal is at liberty to accept the testimony of one or more witnesses to the exclusion of that produced by others, or to accept part of the testimony on both sides and reject any portion not believed by it. * * * It is not possible for this court to know the basis upon which the verdict was rested, but when the evidence affords any fair and reasonable ground upon which it might be sustained, it cannot be said as a matter of law that the result reached was palpably against the proof adduced. * * * Cheatham v. Com., 228 Ky. 765, 15 S. W. [2d] 525; Tackett v. Com., 229 Ky. 312, 17 S. W. [2d] 241."

Reviewing the record before us, in the light of the numerous decisions reiterating the rule above quoted, we adhere to that rule and hold that there was evidence, though somewhat circumstantial in nature, to fully authorize the verdict of the jury; the judgment must stand.

Judgment affirmed.