## Wireman v. Commonwealth.

(Decided April 30, 1937.)

340

W. R. PRATER for appellant.

B. M. VINCENT, Attorney General; W. OWEN KELLER, Assistant Attorney General, and E. R. COOPER, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The appellant was indicted and tried in the Magoffin circuit court upon the charge of willfully murdering one Irvin Prater. He was found guilty of voluntary manslaughter and his punishment fixed at imprisonment for five years in the penitentiary. He appeals.

Appellant filed motion for a new trial, supported by the following grounds: (a) The verdict is not supported by the law or the evidence, and is flagrantly against the evidence; (b) the court erred to the prejudice of appellant's substantial rights in rejecting competent evidence introduced in his behalf, and in admitting incompetent evidence offered by the commonwealth, both over his timely objections saved by exceptions. Finally, it was claimed that the court failed in his duty to properly instruct the jury. We shall discuss such points as are urged, after giving a brief statement of the facts.

The shooting which caused the almost instant death of Prater occurred at the home of Robert Baldridge, a brother-in-law of appellant, on Sunday night, March 19, 1936, some time after 9 o'clock. On the day of the homicide appellant had been fishing and had started homeward about sundown. At a certain point on his way home and near a foot bridge across Trace fork, he met Steve Pinks and Melvin Bailey. About the same time the deceased came up to the foot log accompanied by Joe Wireman and Sammie Bailey. All the parties appeared to be, and according to the proof were, on friendly terms. After the arrival of Prater and his friends, some one produced whisky and all the party partook of it. Appellant and his friends, or at least one of them, started toward appellant's home, and before long, about half a

mile from Baldridge's home, appellant was overtaken by Prater and his companions. Prater was going in the direction of his home at the time, riding a mule. Bailey and Joe Wireman were also riding a mule. Appellant got on the mule with Prater, riding in front. They proceeded in the direction of their respective homes until they arrived at Baldridge's. Here it was suggested by some one of the crowd that they stop. Appellant insisted that he was going on home, but finally they did stop. Bailey hitched his mule on the outside of the fence, but Prater said that his mule would not stand hitched, so he led it into the yard, and tried to hitch it. One witness says Prater was undertaking to hitch the mule, another says that appellant hitched the mule, and that in doing so the mule threw him to the ground.

Up to this point there is little disagreement as to the facts, and the further fact that both parties were openly armed, Prater having a .38 Smith & Wesson, which he had obtained from Bailey the day before by a trade, and appellant having a .38 grip handle Smith & Wesson. It is also agreed that several, if not all of the crowd had freely indulged in the use of liquor, appellant and deceased being fairly well under its influence.

Baldridge, though at home, did not see any part of the occurrence, the only eye-witnesses being Bailey, Joe Wireman, and the appellant. From the time of the hitching of the mule until the homicide, the testimony is conflicting. Bailey says that when appellant was hitching Prater's mule inside the yard, it "jerked him down and he got up and said something; I didn't understand what it was." Prater also said something witness did not hear plainly. After appellant got up from the ground, he and Prater walked toward Baldridge's front porch. Appellant got to the porch and according to witness had his left hand on the porch post. Prater was to his left and appellant "shot under his arm," and said, "How do you like that?" Prater exclaimed, "Lord, have mercy," and ran around the house and fell across a chicken coop. Witness says that at the time of the shot Prater threw up both hands, and had no pistol. When neighbors arrived, Prater's body had been laid out with a pillow under his head, and his pistol was found near the body.

Joe Wireman says that about the time they were "hooking the mule," Prater shoved appellant down and

Prater "jerked his pistol on him," and appellant "jerked his pistol, but neither shot at that time." Appellant and Prater then walked toward the porch, appellant in front, and when he got near the porch the shot was fired. The witness did not see their positions just before or at the exact moment of the shot, but he saw the "blaze of the pistol." This witness also says that at the time of the shot Bailey was standing facing him (the witness), hence could not have seen appellant shoot from under his arm, as he claimed. Bailey denies that such was his position.

Appellant testifying agrees with other witnesses as to what had taken place up to the time of the hitching of the mule, just shortly before the shot was fired. He says that just as he "hooked up Prater's mule to the fence, Prater shoved me down and jerked his pistol." Appellant then drew his weapon and said, "I told him to leave me alone. * * * We started on toward the house; we were about 15 feet from the edge of the porch and I was just a little in front of him when he came up there and throwed his pistol on me again and said I had caused him enough trouble. I knocked the pistol off." Appellant was, as the other witness stated, on the right side of Prater, when he "knocked the pistol off." Then Prater, according to appellant, "jumped back a step or two and placed the gun on me again and just before he could get it placed exactly I shot." Appellant said he shot because, "I thought he was going to shoot me."

Only one shot was fired, the bullet entering the chest about three inches to the right of the right nipple, went through Prater's body and came out about three or four inches to the left of the center of the vertebrae. The description of the wound indicates that Prater was not facing directly toward appellant at the time he fired, though appellant insists that Prater was pointing the pistol directly at him when he fired. Their exact positions relative to each other are not made clear from the proof, but as we view the record a discussion on this point does not seem necessary.

As to the complaint of the court's rulings on the admission of objectionable evidence, and rejection of competent evidence, we have only to comment that a careful reading of the transcript convinces us that the court was fair and impartial in his rulings. No particular evidence is set out in briefs as having been erron-

eously admitted or rejected. The same is true as to the instructions given by the court. There were given correct instructions on murder, manslaughter, reasonable doubt, and the usual definitive instructions. Appellant had his defense put squarely before the jury by an approved self-defense instruction, which is not subject to criticism.

In counsel's brief the main contention is to the effect that the verdict is flagrantly against the evidence. Brought down to final analysis, the import is that the jury should have believed appellant and the witness Wireman and disbelieved the testimony of Bailey. But after the jury has, under what we conceive to be correct instructions, duly deliberated and rendered a verdict to the contrary, we cannot adopt appellant's view. As we have so often said, we cannot reverse a judgment merely because the evidence was admittedly conflicting. The testimony by the commonwealth was beyond any doubt sufficient to take the case to the jury. Appellant admits the firing of the shot which took Prater's life. It became incumbent upon him to produce such testimony as would satisfy the jury that his defense was well grounded. The jury alone is charged with determining the issue. Appellant's defense was fairly submitted. In such a state of case we cannot supplant the jury and now say that their verdict was contrary to or flagrantly against the evidence. Hatfield v. Com., 264 Ky. 721, 95 S. W. (2d) 562; Davis v. Com., 265 Ky. 488, 97 S. W. (2d) 43; Taylor v. Com., 266 Ky. 325, 98 S. W. (2d) 928.

A review of the entire record discloses no error, in so far as we can perceive.

Judgment affirmed.