# McCown v. Commonwealth.

(Decided Oct. 29, 1937.)

W.· A. DAUGHERTY for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant was indicted by the Pike county grand jury for the murder of Bernie Rowe, the homicide having been committed in the early part of April, 1936. Upon a hearing of the case the jury returned a verdict of guilty, fixing the penalty at confinement in the penitentiary for five years, a period within the limitations of the prescribed penalty for manslaughter. Judgment was entered, motion for a new trial overruled, and appeal prosecuted.

In the first ground here presented it is urged that the court erroneously overruled motion for a directed verdict in appellant's favor, made upon completion of the Commonwealth's evidence. Second, that the verdict of the jury is without sustaining evidence, and contrary to and flagrantly against the evidence, being the result of bias, passion, and prejudice on the part of the jury. These two grounds were the only ones set up in the motion for a new trial.

We will dispose of the first ground now by calling appellant's attention to the fact that after the homicide he went to the home of Glenn Osborne a deputy constable, who lived within eight or nine miles of the camp where Rowe was shot, arriving, according to Osborne's estimate of time, very soon after the shooting. Appellant surrendered to Osborne, asking him to go

down and see "about him"; saying that he had shot a man and did not know whether he was dead or not. Appellant and his friends at once went back to the camp with Osborne, and to the spot where Rowe lay dead with a bullet hole through, or almost through, his head. Another witness for the Commonwealth saw appellant fire his pistol near the cabin at the camp, but could not see Rowe at the time, but later saw Rowe dead from a pistol shot  Another witness saw Rowe, and later appellant, go around the cabin and immediately heard a shot; witness went around the cabin shortly after the shot and found Rowe lying there wounded, and from which wounding he died shortly thereafter. All these witnesses testified for the Commonwealth.

Under our repeated rulings, where the accused admits the act which resulted in the homicide, a case is sufficiently made so as to take it to the jury. Hatfield v. Com., 264 Ky. 721, 95 S. W. (2d) 562; Simmons v. Com., 207 Ky. 570, 269 S. W. 732. See, also, Davis v. Com., 265 Ky. 488, 97 S. W. (2d) 43; Wireman v. Com., 268 Ky. 339, 104 S. W. (2d) 1083.

The cases above cited, which might be augmented by many others if deemed necessary, fully dispose of ground No. 1. A discussion of ground No. 2 requires some recitation of the facts, which may best be presented by first giving appellant's version of the homicide.

On the day of the homicide, which occurred "about April 1, 1937," appellant with a number of other persons, including Mrs. Norris, at whose tourist camp the killing occurred, had been to Prestonsburg to attend the trial of some friends in the Floyd circuit court. On their trip back home, at the head of Beaver creek, the persons who had attended court were in two groups, in two cars. For some of them to get home they had to pass Mrs Norris' camp, where the proprietress also operated a restaurant and sold beer. The car in which appellant, Mrs. Norris, and others were traveling, got to the camp around 7 p. m. Appellant and some members of his party stopped at the camp, and others went on in the car to carry home a passenger whose desire was to get home. This car was to, and did, return to the camp later. Appellant and his party remained at the camp and had supper. Some time after their arrival, Rowe and other friends of his came to the camp

in a small Ford truck. Rowe had been drinking and showed definite signs of being intoxicated to a degree, and it appears continued to drink beer.

Later, and as near as we can gather from rather indefinite proof, about 10 p. m. Rowe became boisterous and the proprietress insisted on his leaving. All during this time the proprietress and appellant had been somewhat attentive to each other. After some persuasion Rowe's friends succeeded in getting him to the truck, and some one handed him the crank with which to start the car. Shortly before this time appellant and the proprietress had gone to one of the cabins situated a short distance from the restaurant and kitchen, for the purpose it is said, of getting some photographs which Mrs. Norris had promised to give appellant. It is impossible from the evidence to give a clear description of the cabin into which they went, or other surroundings. The two went into the cabin, closing the door, as Mrs. Norris says at one time, and at another saying it was left open. However this may be, Rowe instead of starting the car proceeded over to the cabin to which appellant and Mrs. Norris had gone, and with the crank struck heavily upon the door several times. Mrs. Norris says the blows struck the panel and splintered it, as appellant also claims, and he adds that something came through the panel, which he thought was the end of a pistol. From this point on the evidence is rather difficult to follow in regard to direction or position, made so by the use of such expressions as "from here to there," "out this way," or "over there" or "over here."

Appellant says that when Rowe struck the door he stepped into another room. Mrs. Norris opened the door and "looked this way and that," but did not see any one, and appellant thought it was time for him to get out. He said, "I went out the door and was going this way and out where the car was at, and got out where this side door came out from the other building, and had to go through the light of that door; it was open. I stopped first as I got to the light, and seen somebody on the other side of me, and I thought if I go through that light, this way, whoever it is, they will kill me, and then I thought I better go in the dark, back the other way. I turned to go around the building, and just as I got to the corner he come just like that strik-

ing right at my face and I just thought I couldn't be quick enough to save my life."

Appellant says he thought Rowe had a pistol in his hand striking at him, and says Rowe struck him once, knocking his right thumb nail loose. Appellant fired one shot and Rowe turned from him. Appellant turned in the opposite direction, went to the car in which his companions were, and suggested that they get away at once. He ran up the road and hid himself, and as his friends came by he got in the car, and, as detailed above, went to the deputy constable's home, where he told the officer he had shot a man and wanted the officer to go back to the camp and see "if what the other man had was a pistol." The officer did return, and found Rowe lying on his face, a bullet wound in his head (the wound not accurately described), with the crank under his feet, but with no pistol or other weapon.

The foregoing is appellant's version, and it is borne out, with some immaterial differences, by Mrs. Norris, up to the point where she went to the door just after the knocking. There is a slight bit of Commonwealth's testimony interwoven in the foregoing, mainly with relation to Osborne's observations after his arrival. Strange as it may seem, with quite a number of persons in the immediate neighborhood, there were no eyewitnesses to the act of homicide, except the appellant and the "partial" eyewitness Crothers, who saw appellant fire the shot in the rear of the cabin, but did not see the person at whom appellant was shooting. This witness, Crothers, had gone to the camp with some of his friends for the purpose of replenishing their gasoline supply. When he got out he met a boy friend who said that Rowe was out there "raising sand," and wanted him to go with him and get him. He says he started rather reluctantly, and, when they got near where Rowe was supposed to be, the shooting occurred. He says as soon as the shooting occurred some woman told them "to get away," and immediately the electric lights were switched off. This is the witness who saw appellant fire the shot, but did not see Rowe, which he undertakes to explain by giving his position with relation to the cabins or restaurant, but not in such a way as to make it clear in the record.

Johnson, one of Rowe's party, tells about the effort to get Rowe away from the place; about his getting the car crank and going to the cabin and knocking or "peck-

ing on the door." After he knocked, deceased jumped off the porch and ran around the house. He says appellant came out of the cabin before Mrs. Norris did; that as soon as Rowe jumped off the porch and ran around the house, appellant came out and walked toward the restaurant, and "walked around there and got out of my sight; it threw him in the dark from me." He went in the opposite way from that taken by Rowe.

Mrs. Norris says appellant was duly sober. The officer says when he came to his home he was drunk. Appellant says that the pistol which he fired belonged to his father-in-law, who had taken it "to court" that morning. When they got back to the camp that night appellant took the pistol from the car, because he could not lock the car. He took it into the restaurant, and, with Mrs. Norris' consent, laid it on a shelf. When he got ready to go home he got the pistol and put it in his pocket. Mrs. Norris testified to this fact. The officer said that when he went down to the camp, and was about to leave, taking the pistol, Mrs. Norris said: "Take care of that, it is my gun." She denied this. The officer says that though he rode from the camp to Pikeville in the car with appellant, he neither saw nor heard any complaint of the alleged injured thumb.

It should be said that the evidence shows that neither appellant nor Rowe had any words previous to the fatal shot. It seems they were unknown to each other; it also appears that appellant, as well as Rowe, was somewhat boisterous during the sojourn at the camp.

On this evidence, as substantially detailed, we are to determine whether or not there was sufficient evidence to support the verdict, or, in other words, whether the jury's verdict is flagrantly against the evidence. The moderate verdict returned by the jury is ample evidence of lack of any passion or prejudice on the part of the jury. From the evidence, while not as forceful as it might have been, we are yet convinced that it proved enough to justify the jury in taking the position that appellant did not satisfactorily establish his plea of self-defense. His version of the episode, with particular reference to occurrences after Rowe had knocked on the door, is not consonant with what one seeking to avoid trouble would have done.

There can be little doubt the jury believed, and they had the right so to believe from appellant's testi-

mony as to his movements, that he became incensed at the assault by Rowe, and determined to avenge that assault then and there. The testimony of Crothers and Johnson, while not clear as to details, embodies sufficient proof to indicate that appellant's movements toward the back of the cabin or restaurant were not to avoid or evade danger.

A verdict is not flagrantly or palpably against the evidence when it is reasonable for a jury to determine from proven facts and circumstances that the accused is guilty. It is not possible for this court to know the basis upon which a jury's verdict is rested, but it is sufficient when the evidence affords any fair and reasonable ground upon which it may be sustained, and we cannot say as a matter of law that the jury's conclusion was palpably or flagrantly against the evidence. Newsome v. Com., 240 Ky. 333, 42 S. W. (2d) 306; Barton v. Com., 240 Ky. 786, 43 S. W. (2d) 55; Tussey v. Com., 241 Ky. 91, 43 S. W. (2d) 351; Hatfield v. Com., supra; Bullock v. Com., 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407. The rules which guide us, as clearly stated in the above-cited cases, are peculiarly applicable when there is an admission that the accused committed the act which resulted in the homicide, and self-defense is the plea. See cases first above cited.

We have viewed the evidence here just as favorably to the accused as possible so to do, but, having in mind the rules, oft repeated, we must adhere to them, and in so doing we find no ground upon which to uphold appellant's second contention, or on any suggested ground, to disturb the jury's verdict.

Judgment affirmed.