## Decker v. Commonwealth.

May 2, 1939.

**146**

E. BERTRAM and BERTRAM, BERTRAM & PHILLIPS for appellant.

HUBERT MEREDITH, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, Ernest Decker, is appealing from a judgment on the verdict of a jury finding him guilty of the crime of voluntary manslaughter, and fixing his punishment at 15 years in the penitentiary. He was accused of wilfully murdering Hubert Morrow on the night of September 3, 1938. Reversal is urged on the grounds that (1) the trial court erred in the admission of evidence; (2) the verdict is flagrantly and palpably against the evidence and the law; and (3) the trial court erroneously instructed the jury.

Ernest Decker, Hubert Morrow and some other young men were together the early part of the night of September 3; 1938, in a remote section of Wayne County, Kentucky. All of the members of the party were drinking. The other members of the party separated from Decker and Morrow about 8 o'clock. Morrow's mother testified that these two came to Morrow's home and stayed a short while. While they were near the home of Alvin Peavler, Morrow went there to get some matches. He then joined Decker who was waiting for him in the road about 20 steps from Peavler's gate. Alvin Peavler testified that he heard Decker and Morrow cursing down on the road about 15 minutes after Morrow got the matches. Paul Peavler and Roy Woods, who had been with Decker and Morrow earlier in the evening, testified that they were present when Morrow came to Alvin Peavler's house for the matches. They testified also that they heard Decker and Morrow cursing down on the road. Ells Medors testified that he saw Decker and Morrow in the road near Alvin Peavler's tobacco barn about 9:30 o'clock. He said that they were playing with two bird dogs and that both of the parties were intoxicated, and that Decker pulled some liquor out of his pocket. He testified also that,

after he had gone about 50 yards down the road, he looked back and "they seemed like they was scuffling," and that he heard Hubert say, "Oh, you are tearing me." Medors said the moon was shining and it was clear.

There is no substantial conflict in Ernest Decker's testimony as to what happened up until the time Ells Medors left him and Morrow in the road, except that he said that Morrow had only two matches when he came back from Alvin Peavler's, and that Morrow started "cussing and rearing" on Peavler for not giving him but two matches. He said that there was no trouble between him and Morrow. He testified also that Medors was with them about five minutes and that he and Morrow gave him a drink. He said that he and Morrow had two of Morrow's dogs with them, and that they were playing with them while Medors was present. He denied that he and Morrow started scuffling shortly after Medors left them. He said that he did not hear Morrow say anything about "tearing him."

According to Decker's testimony, he and Morrow went to Morrow's home to get some more matches and then started over to Luther Abner's. He said they met Bob Baker and George Baker in the road and the four of them talked for about five minutes when the Bakers started off one way and he and Morrow the other. He said they had only gone a short distance when Morrow decided to go home, and that he turned around and started walking behind the Bakers, and that he, Decker, went on toward Luther Abner's house. Before reaching there he stopped at a spring about 100 yards from the house and got a drink and then started back in the direction from which he had come. He testified: "After I had got by the Church House, a dog jumped out at me, vigorously, growling, and I shot at the dog to stop him." According to Decker's testimony, the dog ran away after he fired the shot. Decker said that Morrow had gone down the road about 40 yards from where they were at first. He said that he had walked on about 15 or 20 steps when he heard "some threshing around and groaning up about the fence," and that he went back and found that Morrow was shot. He then went to his home and told his father what had happened and they got a lantern and went to tell Lloyd Morrow and Luther Abner about the shooting. He said that he told Luther Abner, brother-in-law of Morrow, that "I shot

at a dog, and found Hubert shot, and I didn't know whether I had shot him or not.''

Morrow was taken to his home, and early the next day, Sunday, he was taken in Decker's car to Burnside. Dr. J. H. Horton treated him there. He was brought back from Burnside to his home where he died Monday morning. Decker went to Burnside with Morrow and showed him such attention as he could up until the time he died.

According to the testimony of Dr. Horton, Morrow had a gun shot wound in his left arm above the elbow, a small flesh wound on his chest, and a puncture wound on the side of his face. The bullet buried itself about the base of the brain. The doctor testified that it was his impression that all of the wounds were made with one bullet.

There was testimony to the effect that it was approximately 5 to 10 feet from the place where Decker said he was standing when he fired the shot at the dog to the place where Morrow was found. Decker said that the dog was in line between where he was standing when he fired and the place where he found Morrow.

Mrs. Luther Abner, a sister of Morrow, and her son, John Frank Abner, testified that Decker was at their home Wednesday before Morrow was shot on Saturday, and that they heard Decker say that every time he got to drinking he wanted to kill Hubert, and that when he was not drinking he was the best friend he had. Hubert Winchester testified that he had seen Decker and Morrow together prior to the time Morrow was shot, that Decker was drinking and had a knife in his hand and that Morrow asked him (Winchester) to take the knife away from Decker, which he did. Dave Tuggle testified that during the month of April he heard Decker say in the presence of Custel Buck that he snapped his gun in Hubert Morrow's face three times. Decker denied that he had ever made any threats against Morrow. He said that the feelings between him and Winchester were bad. He also testified that he was in Illinois during the month of April. He admitted, however, that he was in Tuggle's shop during the month of February, and that Custel Buck was present when he was there. He denied that he had told Tuggle that he snapped his gun in Hubert Morrow's face three times.

The appellant's first objection is directed toward

the evidence relating to threats which Decker was said to have made against Morrow. It is admitted by counsel for the appellant that, as a general proposition, threats may be proven to establish malice, or as tending to show who brought on the difficulty, but that they are not substantive testimony and proof of threats will not establish the corpus delicti, nor the guilt of the accused. In support of their proposition they cite the cases of Evans v. Commonwealth, 221 Ky. 648, 299 S. W. 553, and Daniel v. Commonwealth, 170 Ky. 693, 186 S. W. 489. In the Daniel case, the only evidence which in any way connected Daniel with the death of the deceased was the threats which he had made to do violence to the deceased in the event the deceased should interfere with the relations betwen him and the woman in the case. In the Evans case the evidence offered against the accused was wholly circumstantial. In that case it was said [221 Ky. 648, 299 S. W. 555]:

> "Previous threats, made by one charged with murder, against the person he is charged with having murdered are never admitted as substantive evidence that he committed the acts constituting the crime. Threats are admitted in evidence only as being competent on the question of malice, or on the question who was the aggressor, if the homicide occurred in a rencounter."

In the case at bar there are facts and circumstances which unquestionably distinguish it from the Daniel and Evans cases, supra. It is beyond doubt that the shot which Decker said he fired at the dog hit Morrow and was responsible for his death. Both Decker and Morrow had been drinking, and there is testimony to the effect that following the time Morrow got the matches from Alvin Peavler there was considerable cursing and rowing down in the road where Decker and Morrow were. As noted, Decker's explanation of the cursing was that Morrow was cursing Peavler because he gave him only two matches. There is also the testimony of Ells Medors who said that he saw the parties scuffling in the road after he had gone about 50 yards from where he had left them. It can be seen that there was competent substantive evidence before the jury as to Decker's guilt. Therefore, the evidence as to the threats which Decker had made against Morrow was competent, as indicated in the Daniel and Evans cases, supra.

In the case of Dean v. Commonwealth, 260 Ky. 97, 83 S. W. (2d) 887, which has also been cited by the appellant, evidence as to the threats made against the deceased by the accused, who pleaded self-defense, was held to be admissible as showing the accused's state of mind toward the deceased, and a motive for the killing. See, also, Gambrel v. Commonwealth, 241 Ky. 39, 43 S. W. (2d) 335; Conn v. Commonwealth, 245 Ky. 583, 53 S. W. (2d) 931.

We turn now to appellant's contention that the verdict is flagrantly and palpably against the evidence and the law. It was for the jury to determine the credibility of the witnesses. They heard the evidence concerning the circumstances leading up to the time Morrow was shot. They heard Decker's testimony as to his shooting at the dog. They heard also the testimony relative to the threats which Decker was said to have made against Morrow and the statements of two witnesses that they had heard him say that every time he got drunk he wanted to kill Morrow, but that when he was sober he was his best friend. Unquestionably, there was sufficient evidence to warrant the submission of the case to the jury. We have frequently said that a verdict is not palpably and flagrantly against the evidence where it is reasonable for the jury to find from proven facts and circumstances that the accused was guilty. Francis v. Commonwealth, 260 Ky. 590, 86 S. W. (2d) 310; Fox v. Commonwealth, 248 Ky. 466, 58 S. W. (2d) 608; Shepherd v. Commonwealth, 236 Ky. 290, 33 S. W. (2d) 4; Davis v. Commonwealth, 271 Ky. 180, 111 S. W. (2d) 640; McCown v. Commonwealth, 271 Ky. 265, 111 S. W. (2d) 389; Carter v. Commonwealth, 278 Ky. 14, 128 S. W. (2d) 214. Furthermore, we have often said that we will not interfere with the verdict of the jury unless it is so palpably and flagrantly against the evidence as to shock the conscience, or necessarily lead to the conclusion that it was the result of passion and prejudice rather than deliberate consideration on the part of the jury. Noble v. Commonwealth, 267 Ky. 809, 103 S. W. (2d) 258; Lee v. Commonwealth, 250 Ky. 421, 63 S. W. (2d) 483; Sells v. Commonwealth, 271 Ky. 447, 112 S. W. (2d) 692. We think that the facts and circumstances in the case at bar were sufficient to warrant the jury's finding that Decker was guilty of voluntary manslaughter.

The appellant's third and last contention has to do

with the instructions given by the trial judge. We have carefully examined the instructions given the jury in this case, and while they could have been improved upon in some respects, it is our conclusion that they were not prejudicial to the appellant's substantial rights. We do not think that the jury was misled or confused by them. An instruction was given which would have permitted the jury to find Decker not guilty if they thought the killing of Morrow was the result of an accident arising out of Decker's shooting at a dog. Obviously, the jury did not choose to accept this version of the shooting. As indicated above, it is our conclusion that there was sufficient evidence to warrant the submission of the case to the jury, and to uphold the jury's verdict that Decker was guilty of voluntary manslaughter.

Judgment affirmed.