## Howard v. Commonwealth.

### April 23, 1940.

H. H. Ramey, Special Judge.

Ollie James Cockrell for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Hubert Howard shot and killed Hiram Ingle at the Frozen Inn in Breathitt County early in the morning of March 14, 1939. Howard and Marcus Mann were jointly indicted for the crime at the March 1939 term of the court. The regular trial judge, being related to both Mann and Howard, disqualified himself, and the Commonwealth's Attorney, because of his relationship to Mann, disqualified himself. After proof was heard the Commonwealth's motion for a change of venue was overruled. Only five jurors of the regular panel having tentatively qualified, the special judge sent to the adjoining county of Wolfe for veniremen to complete the jury. Following the completion of the jury, only two of whom were from Breathitt county, the defendants moved for a severance of trial and the Commonwealth elected to try Mann first. He was acquitted.

Howard was tried at the August 1939 term. The Commonwealth again moved for a change of venue, the Commonwealth's Attorney stating that, among other things, because of the wide publicity given the Mann trial at the March term, he did not believe an impartial jury could be selected from Breathitt county. This motion was overruled. The Commonwealth moved also that a jury be obtained from another county. Only eleven members of the regular panel tentatively qualified for the trial. The special judge then ordered 60 veniremen from Owsley county to complete the making of the jury. This was done over Howard's objection. As a basis for this action the trial judge reviewed, among other things, the circumstances heretofore referred to, and also set forth his reasons for not sending to either Magoffin or Wolfe county, the other two counties in the judicial district, for a jury primarily because of the wide relationship of Howard in these counties. Upon trial Howard was found guilty of murder and his punishment fixed at life imprisonment in the State Reformatory. He is now appealing.

Three grounds are urged for reversal. They are: (1) The court erred in sending to Owsley county for a jury; (2) the verdict is so palpably and flagrantly against the evidence as to indicate it was the result of passion and prejudice against Howard; and (3) the court erred in excusing John Pelfrey, a juror, for cause.

Section 194 of the Criminal Code of Practice pro-

vides when a trial judge may send into an adjoining county for a jury. This section reads as follows:

"If the judge of the court be satisfied, after having made a fair effort, in good faith, for that purpose, that, from any cause, it will be impracticable to obtain a jury free of bias in the county wherein the prosecution is pending, he shall be authorized to order the sheriff to summon a sufficient number of qualified jurors from some adjoining county in which the judge shall believe there is the greatest probability of obtaining impartial jurors, and from those so summoned the jury may be formed."

It was said in the case of Carter v. Commonwealth, 267 Ky. 640, 102 S. W. (2d) 1020, that this section of the Code vests the trial judge with a discretion which should not be interfered with unless it is manifest that it has been abused. Nine jurors had tentatively qualified in the Carter case when the court ordered a venire from an adjoining county. In the case of Canter v. Commonwealth, 274 Ky. 508, 119 S. W. (2d) 864, a venire from an adjoining county was ordered after eleven jurors of the regular panel had tentatively qualified. In that case it was said that a judgment will not be reversed on such a ground unless an abuse of discretion on the part of the trial judge affirmatively appears. Under the circumstances we are not prepared to say that the special judge abused his discretion in sending to Owsley county for veniremen. It was shown that Howard was widely related throughout Breathitt county, being a relative of the regular judge; that before the Commonwealth elected to try Mann first it was necessary to send to Wolfe county for veniremen to complete the jury; and that wide publicity was given to the trial of Mann, who was jointly indicted with Howard.

The third ground urged for reversal is directed to the action of the special judge in excusing John Pelfrey, a juror. While the jury was being examined Pelfrey was asked whether he had served as a juror at a trial more than a year previous when Hubert Howard was being tried on a murder charge. Pelfrey said that he had, and it was later brought out that Howard was acquitted on that trial. In excusing Pelfrey, over Howard's objection, the court said:

"There being a difference between counsel as to the

form of question asked this juror, and in view of the statement above given by the juror himself as to what questions were asked, the Court excused said juror and inasmuch as the examination of the juror was not taken down, the original interrogation, the court is of the opinion that the juror should not sit and admonished the counsel for the Commonwealth whether said question had or had not been asked, no similar question should be asked in further examination of the jurors, that is as to what the verdicts were in cases in which jurors had heretofore sat."

Howard insists that the excusing of Pelfrey was prejudicial to his substantial rights, and that the Criminal Code includes no such ground for challenging a juror. Section 209 of the Criminal Code provides as follows:

"Actual bias is the existence of such a state of mind on the part of the juror, in regard to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially and without prejudice to the substantial rights of the parties challenging. (It shall not be a cause of challenge that a juror has read in the newspapers an account of the commission of the crime, with which the prisoner is charged, if such juror shall state on oath that he believes he can render an impartial verdict according to the law and the evidence; and provided further, that in the trial of any criminal cause the fact that a person called as a juror has formed an opinion or impression, based upon rumor or upon newspaper statements (about the truth of which he has expressed no opinion), shall not disqualify him to serve as a juror in such case, if he shall, upon oath, state that he believes he can fairly and impartially render a verdict therein in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement.)"

Pelfrey was raised in Breathitt county, and even had he been tentatively accepted for service he might have been challenged by either party. Under the circumstances we are not prepared to say that the trial judge abused a sound discretion in excusing him. But even

if the action was erroneous, we are of the opinion that it was not so prejudicial to Howard's substantial rights as to warrant the reversal of the judgment.

The second ground necessitates a review of the evidence. Hubert Howard and his brother, Dennis, Ed Little, John Howard, a relative of both the appellant and the deceased, Ingle and two girls had spent the night, or most of it, at a place called Blanton Bridge, which was operated by the appellant and his father. Between 6:30 and 7:00 a. m. the party of seven left for the Frozen Inn in a Ford roadster. John Howard, the appellant and Ingle were in the rumble seat. Ingle was drunk. He had a 30 caliber Luger automatic pistol which he had been displaying. When they reached the Frozen Inn the appellant, John Howard and Ingle went inside. The appellant went into a room where Mann was sleeping. John and Ingle went outside. While they were out there Ingle pointed the gun at John and told him he was going to kill him. John testified that he knew that Ingle was only kidding and that he was not alarmed about the matter. According to testimony for the appellant, one of the girls rushed into the room where he and Mann were and said, "Lord have mercy, some of you boys run out of here. This boy (meaning Ingle) is going to hurt somebody." Hubert Howard said that he picked up a 45 caliber pistol from a table in Mann's room, stuck it in his belt and went out the front door. According to his testimony he reached the scene at about the time Ingle pointed the gun at John Howard. He said that he tried to get the gun away from Ingle and that Ingle started toward the car and fired one shot. The testimony for the Commonwealth is that Ingle fired his pistol into the ground. The appellant said that the shot was fired in the direction of the car. Ingle went up to the car on the side opposite the driver, and, according to the testimony for the Commonwealth, placed his left arm on the door as though he were talking with the occupants of the car, that the appellant rushed to the other side of the car, fired at Ingle, and then went around to the rear of the car and fired three shots into his back. The coroner testified that Ingle had a bullet wound in his left side and three in his back. The testimony for the appellant is that when Ingle approached the car he stuck his pistol in Dennis face and said that he would make him drive him any place he wanted to

go, that the appellant attempted to grab the pistol and missed it, and that when he did so Ingle backed away and shot through the car at him. The appellant further testified that when he approached the car he was holding his pistol down at his side so that Ingle would not see it, and that Ingle fired through the car at him before he (the appellant) began firing. He testified also that Ingle changed hands with his pistol and continued firing at him as he was behind the car, that when Ingle ceased firing he pointed his gun at the occupants of the car and at that time he (appellant) raised up from behind the car and began shooting at Ingle. There is no evidence as to any previous trouble between the parties and there is none to the effect that Ingle had made any threats against the appellant before the fatal shooting began. The coroner testified also that upon searching the premises he discovered one empty Luger shell and four or five empty 45 shells.

It is obvious from what has been said that Hubert Howard attempted to establish self defense. The jury refused to accept this version of the shooting. The credibility of the witnesses was for the jury to determine. Decker v. Commonwealth, 278 Ky. 145, 128 S. W. (2d) 600, and cases cited therein. From our examination of the record there was ample evidence to support the verdict reached.

It follows from what has been said that the judgment should be and it is affirmed.