## Baker v. Commonwealth.

November 11, 1949.

Weldon Shouse and Thomas Shumate for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE KNIGHT—Affirming.

## Statement of the Case.

Appellant John Baker was indicted in the Fayette Circuit Court for the wilful murder of Eugene Sowers. On trial of the case he was convicted and his punishment fixed at life imprisonment. He prosecutes this appeal from a judgment based on that verdict.

Appellant was 55 years of age when he married, as his second wife, Alice Hoskins 20 years of age, on February 28, 1948. This December-May marriage did not long remain a happy one and within a few months thereafter she began going out on unexplained absences from their apartment home in Richmond where appellant had always lived and where he operated a restaurant. He was suspicious that she was going out with the deceased, Eugene Sowers, with whom she had gone before her marriage to appellant. He had heard rumors of their being seen out together, and in April following their marriage he went to see Sowers at Clark's poolroom for the purpose, as he says, of remonstrating with him and asking him to leave his wife alone. There was testimony by the Commonwealth that on one of these visits to the poolroom he left word that unless Sowers ceased his attentions to his wife he would kill him. He admitted on the witness stand, on cross examination, that he had made some such threat at that time and there was testimony of threats he had made at other times that he would "get" Sowers if he didn't leave his wife alone.

On the last occasion that his wife left their home, which was in the latter part of September 1948, she took with her part of her clothes and told appellant she was going to the home of her father who lived out from Richmond on the Lexington pike. He spent a good part of the next week trying to locate her, without success.

On the day of the killing, October 7, 1948, appellant received information that his wife had boarded a bus for Lexington, and he boarded a later bus to Lexington for the purpose of trying to find her, arriving there about 3:00 p. m. He hired a taxi and visited various taverns in and around Lexington where he thought she might be found, but without success. He had brought to Lexington with him a loaded pistol which he usually kept about his restaurant, and while in Lexington purchased another one from a store there, along with some cartridges for same.

Early in the evening of the 7th, after his fruitless search for his wife in Lexington, he employed the same taxi driver to take him to the Halfway House about midway between Lexington and Richmond. He arrived there about 8:00 o'clock p. m., went in and took his seat in one of the booths opposite the bar, facing the door. He sat next to the wall and an acquaintance, Joe Baldwin, accompanied by Mrs. Mary Bentley, came in and occupied the seat in the booth opposite him. Shortly thereafter, about 8:15 o'clock, Eugene Sowers entered the front door of the Halfway House accompanied by two friends, Ralph Starnes and Donald Agee. They passed by the bar and the booths and went to a rear room near the kitchen where they ordered and proceeded to drink one or more bottles of beer. Donald Agee did not drink his beer with the other two but brought his out into the bar proper where he drank it while talking to others sitting in the booths. When Starnes and Sowers finished their beer in the back room they came out into the bar.

Up to this point there is no substantial conflict in the testimony, but from this point until Eugene Sowers fell dead on the floor, the testimony is in conflict as to just what transpired. According to the Commonwealth's evidence, Sowers and his companion Starnes came from the back room and called their other companion, Agee, who at that time was around the juke box preparing to play some tunes, telling him they were going home. While waiting on him Sowers and Starnes decided to have another beer and ordered up three. Agee came to the counter and got his and returned to the juke box, while Sowers and Starnes proceeded to drink theirs standing at the bar almost opposite the

booth occupied by appellant, about 7 or 8 feet away. Without any warning appellant, from his booth, fired five shots at Sowers, all of them taking effect. Deceased fell face down a few feet from the door and his pistol, not fired, was found several feet from his body behind the partly opened door. Appellant left after the shooting and was arrested several hours later at another roadhouse in the direction of Richmond at which time he had two pistols concealed on his person.

The version of the killing from the defense standpoint, supported principally by the testimony of the appellant, but corroborated to some extent by one or two witnesses, is that when Sowers and Starnes came out of the back room where they had been drinking beer, they walked past appellant and when Sowers got to the front door he stopped and said: "John Baker, I am tired of your threats, I will go with your wife any time I please," to which appellant said, "I had better not catch you." Sowers then started back toward Baker saying, "We will settle that right now," and with that pulled his pistol as he advanced toward appellant. Appellant then drew his pistol and fired.

### Grounds for Reversal

Appellant asks for reversal on three grounds: (1) that the court should have peremptorily instructed the jury to return a verdict of acquittal because the Commonwealth failed to produce any evidence to refute or rebut his plea of self-defense; (2) that the photographs of the body of deceased showing the bullet wounds were not admissible as evidence; (3) that the pistols were improperly admitted in evidence. These will be considered in the above order.

We think the above brief resume of the testimony is sufficient to demonstrate that there is no merit in appellant's first contention. The testimony for the Commonwealth gives the picture of the jealous husband who had been searching for his errant wife many years younger than he. Armed with two pistols he sees close to him with his back turned the young man whom he accuses of taking her away from him and whom he had threatened to kill. The Commonwealth's theory of the case, sustained by considerable evidence, was that the

killing was one for revenge by a jealous husband aimed at one who he thought was the paramour of his wife.

On the other side, the picture is one of a justifiable killing in self-defense by a man who was being approached by a younger man, pistol in hand, telling the older one that they would settle the dispute between them right now.

It is seen that there are two well defined theories of the killing each supported by evidence. If there was ever a case for a jury to decide, this was one. Clearly it is not the province of this court to weigh the conflicting evidence and usurp the function of the jury. The jury under proper instructions weighed the evidence, reached a verdict and we cannot say that the verdict is flagrantly against the evidence or that it is not sustained by the evidence.

In the recent case of Barker v. Commonwealth, 304 Ky. 13, 199 S. W. 2d 713, 715, this court said:

"The rule in cases of this character is that where there is no denial of the firing of the fatal shot, or doing the act which caused the death or injury, the only question for the jury is whether or not the one charged, committed the act in good faith in self-defense, Farris v. Commonwealth, 295 Ky. 324, 174 S. W. 2d 415, and it is in such cases incumbent on defendant to convince the jury that the act was excusable. Bigby v. Commonwealth, 273 Ky. 335, 116 S. W. 2d 659."

In the present case there was proof and admission by the appellant that he fired the shots which took the life of the deceased. The only question in such cases to be decided by the jury is whether or not the act of the accused is excusable, because committed in self-defense. Admission by the accused that he killed Eugene Sowers made it incumbent upon him to furnish proof that his act was excusable under all the facts and circumstances of the case. Whether or not he has done so is, and always has been, under our repeated decisions in like cases a matter peculiarly for the jury, Lickliter v. Commonwealth, 255 Ky. 471, 74 S. W. 2d 918, unless defendant's proof uncontradictedly establishes his defense. See Privitt v. Commonwealth, 271 Ky. 665, 113 S. W. 2d 49.

In homicide cases where the Commonwealth proved

and the defendant admitted the act of homicide and the accused produced testimony to show excuse therefor, whether the act of killing the deceased was in self-defense, is a question for the jury. Francis v. Commonwealth, 260 Ky. 590, 86 S. W. 2d 310.

The objection which appellant makes to the admission of the photographs of part of the body of deceased showing the bullet holes, is that there was no proof to the effect that the pictures represented the condition of the body immediately after the shooting and there was no evidence that the holes in the body of deceased were actually caused by the shots fired from the gun of appellant.

The photographs were made in the presence and under the direction of Aaron Smith, deputy coroner of Fayette County. Mr. Smith has been deputy coroner for 20 years and during that time has been associated with the undertaking firm where the body of the deceased was prepared for burial, and has had considerable experience in that line. He testified that the photographs were made within an hour or two after death and fairly and accurately represent the condition of the body at the time with reference to the wounds which caused his death. He testified that five shots entered the body, one in the left shoulder, one in the left side and three in the back, as shown in the photographs, one piercing the spinal cord, any one of which would have been fatal. He was able to point out, from his experience in such matters, the points of entrance and exit.

There is nothing about these pictures, which are filed as exhibits, that would be calculated to inflame or prejudice a jury, which has been held in some cases to justify denial of admission of pictures as evidence, and we do not think it was error to admit them. We think they were made at a time close enough to the shooting that they represented the condition of the body at that time and reflected the points of entrance so as to assist the jury in determining the location of the deceased at the time of the shooting, an important point in the case. In the case of Waters v. Commonwealth, 276 Ky. 315, 124 S. W. 2d 97, this court upheld the admission of a photograph of part of a nude body taken the day following the killing. See also Davis v.

Commonwealth, 279 Ky. 127, 129 S. W. 2d 1030, and Calhoun v. Commonwealth, 301 Ky. 789, 193 S. W. 2d 420, and cases therein cited.

There are situations when it becomes necessary to determine whether bullet holes found in a body of a deceased person were caused by a particular pistol or a particular type of pistol, and in such cases the science of ballistics must be brought into play. There was no such situation here. It is admitted that Sowers was killed by a gun in the hands of appellant and fired by him. There was no denial of that but he sought to justify his killing on the ground of self-defense. It was therefore not necessary for the Commonwealth to prove that the holes in the body of the deceased were caused by shots fired from the gun in possession of appellant, which fact had been shown by other evidence and not denied.

There is no merit in appellant's final contention that the pistols involved in the case were inadmissible as evidence because they were not properly identified. Officer Modica of the Fayette County Patrol, the first officer to arrive on the scene of the killing, picked up the pistol which had fallen from the hand of the deceased as he fell. He testified that it was tagged for identification in the usual way and later turned over to the Chief of the Patrol. He positively identified it as the same pistol he picked up near the body of deceased shortly after his death. The two guns found on appellant when he was arrested were likewise turned over to the Chief of the Patrol by the arresting officers and Chief Franklin testified that both these pistols and that of the deceased were kept in the property room under lock to which only he has the key; that they remained there from the night they were taken until they were taken to the courthouse on the day of the trial. He testified that they were in the same condition as on the night they were taken. We think this met all requirements of identification and that they were properly admitted as evidence in the case.

We have carefully considered the entire record of this well-conducted case and have found it free of reversible error. Defendant had a fair trial and received a lesser sentence than the jury might have given him. Wherefore the judgment is affirmed.