## Combs v. Commonwealth.

### Sept. 24, 1940.

Chester A. Bach, Judge.

Moss Noble and Rodgers T. Moore for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

In March, 1940, Willie Combs was convicted of the crime of maliciously shooting and wounding Jeff Turner. His penalty was fixed at three years in the State Reformatory. He is appealing.

Combs operated a small mine in Breathitt county. Jeff Turner and his brother Bob worked for Combs in the mine. Some feeling seems to have developed between Jeff and Combs because Bob Turner's wages were raised and Jeff's were not.

The shooting took place late in the afternoon of March 13, 1939. Jeff Turner was drinking and had gone to the Mullins' store on Frozen Creek that after-

noon. He left a 30-30 rifle with Mrs. Mullins. Combs lived near the Mullins' store. He quit work about the middle of the afternoon and went to his home. Shortly afterward he and members of his family went to the Mullins' store. As he was leaving the store he and Jeff Turner had some words and engaged in a scuffle, which ended by Combs running down a hill and across a foot bridge toward his home. Combs' son seems to have seen the difficulty and started in the direction of the bridge with a shotgun. Combs took the gun from his son and concealed himself behind a large rock. Turner got his gun from the Mullins' home, broke away from parties who attempted to stop him, and proceeded down the hill toward the bridge. According to testimony for the appellant, Turner pointed his gun at Ralph Sewell, who jumped into a ditch out of his view. Turner was drunk at this time, and counsel for the appellant offers the suggestion that Turner mistook Sewell for Combs. There is sharp conflict in the evidence as to what happened as Turner neared the bridge. According to Combs' version of the shooting, he stepped from behind the rock and called to Turner to stop; that instead of so doing Turner pointed his rifle at him; that he fired one barrel, some of the shot striking Turner; and that he then called to parties who were nearby to come and get Turner, which they did. The Commonwealth's version is that, as Turner started across the bridge with his rifle in front of him and across his left arm, Combs stepped from behind the rock and fired once at Turner, some of the shot striking him and some striking the side of the gun stock.

We are asked to reverse the judgment on the grounds that the verdict is palpably and flagrantly against the weight of the evidence, and that it is the result of passion and prejudice on the part of the jury toward Combs.

In all probability Turner was the aggressor in the affray at the Mullins' store. Combs left this scene and proceeded toward his home. He met his son with a shotgun, took the gun from him and concealed himself behind a large rock, apparently waiting for Turner. While Combs and his son testified that they saw Turner coming toward the bridge with his rifle, this of itself would not necessarily have made Turner the aggressor in the shooting incident. It was necessary for Turner

to go in the same direction that Combs had gone in order to reach his home. We have noted also that there is sharp conflict in the evidence as to what happened at the bridge, the scene of the shooting. There is also the testimony that shot struck the side of the gun stock, which testimony is in support of the Commonwealth's version of the shooting. Under the circumstances we can not escape the conclusion that there was sufficient evidence to take the case to the jury. The credibility of the witnesses was for the jury to determine. Decker v. Commonwealth, 278 Ky. 145, 128 S. W. (2d) 600; Howard v. Commonwealth, 282 Ky. 663, 139 S. W. (2d) 742; Farley v. Commonwealth, 282 Ky. 668, 139 S. W. (2d) 745.

We find no showing of passion and prejudice on the part of the jury. There appears to have been no objection to the panel, and no motion was made for a change of venue. It is insisted that there were numerous trials and convictions in Breathitt county about the time Combs was convicted, but we fail to see how this of itself would have prevented his having a fair trial. As pointed out by the Commonwealth, Combs could have been sentenced to the Reformatory for 21 years, whereas his punishment was fixed at only three years.

Finding no error prejudicial to the appellant's substantial rights, the judgment is affirmed