## Williams v. Commonwealth.

June 17, 1941.

254

Napier & Napier, Calloway W. Napier and Calloway W. Napier, Jr., for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Russell Williams shot and killed Eulis Ritchie between nine and ten o'clock on the night of November 4, 1940. It is Williams' claim that he shot Ritchie in self-defense. Williams was found guilty and his punishment fixed at 10 years in the Reformatory. He is asking that his case be reversed on the grounds that (1) the court erred in refusing to give a peremptory instruction in his favor, and also that the verdict is palpably and flagrantly against the law and the evidence; and (2) the court erred in refusing to exclude certain evidence and questions eliciting same.

Williams and Ernest Ritchie, a brother of deceased, went rabbit hunting about six o'clock in the afternoon on the day of the killing. Each party had a shotgun, so Williams testified. In a short time they met the deceased, Dewey Asher, John D. Campbell and Bill Jones. The group decided to go fox hunting and took five or six dogs along with them for that purpose. Only Williams took a gun. The deceased carried a carbide lamp. By the time the parties had reached the top of a mountain Williams had fired his gun several times. It seems that Williams and Ernest Ritchie went along together. Sometime after nine o'clock all the members of the party met. About this time a dog belonging to Williams and one belonging to Asher got into a fight and Williams struck Asher's dog with his gun. The deceased said that if it had been his dog he would have whipped Williams or got whipped himself. There is sharp conflict in the evidence from this point.

The Commonwealth's version of the killing is that

the deceased advanced two steps toward Williams and that the latter retreated some five or six steps over the side of the mountain and fired the fatal shot at the deceased when he was some five steps from him; that he reloaded his gun and threatened to kill the other members of the party; that Ernest jumped behind a stump and Williams advanced to the stump and threatened to kill him; that Ernest grabbed the gun barrel and while they were scuffling over the gun a second shot was fired; and that Williams left the scene when another member of the party came to the place where he and Ernest were scuffling after Ernest had called for help. Williams' version is that, after the deceased had made the statement about hitting the dog, he and Ernest advanced toward him and that he backed down the mountain some 15 or 20 feet; that the light was thrown in his face; that both the Ritchies grabbed the gun; that he felt he was in danger because he was afraid he would fall over a cliff to his rear and because he was afraid the deceased would take the gun away from him and kill him; that the gun was discharged while the parties were scuffling over it; that it was taken away from him; and that the second shot was fired after he left the scene. One of the witnesses for the Commonwealth testified that Ernest advanced toward Williams along with the deceased. Other Commonwealth witnesses testified that he did not do so. There is testimony that the night was dark and that the cliff was some 50 or 75 yards from the scene of the shooting. There is conflicting proof as to whether or not there were stumps at the place.

It can be seen from the foregoing that there is sharp conflict in the evidence as to the shooting. That the deceased made a threatening statement and advanced toward Williams is beyond dispute; but, granting this, we are faced with the question of whether or not Williams used more force than was necessary to protect himself. If we accepted his testimony, which, as has been indicated, was supported in one respect by a Commonwealth witness to the effect that Ernest also advanced toward him, we would conclude that he shot the deceased in self-defense. But we are faced with the proof offered for the Commonwealth to the effect that the deceased took only two steps toward Williams and that the fatal shot was fired when the parties were some five steps apart. Williams was familiar with the topography of the county where the shooting took place, so not much weight is to

be given to his testimony as to his fear of backing over a cliff some 50 to 75 yards to his rear. Furthermore, he was the only member of the party who had a gun. We have noted also the conflicting proof as to the firing of the second shot. Clearly this is a case where it was for the jury to determine the credibility of the witnesses. Combs v. Commonwealth, 284 Ky. 546, 145 S. W. (2d) 36, and cases cited therein. The members of the jury accepted the Commonwealth's version of the killing, and we are not prepared to say that their verdict is palpably and flagrantly against the evidence.

The second complaint is directed toward the manner in which the Commonwealth's attorney cross-examined Williams and also to the following question put by him to a witness on cross-examination: "Didn't you know that in a case of homicide the fellow might be prosecuted and the shell ought to be kept for evidence?" We fail to see how the question just quoted was in any manner prejudicial, when it is viewed in the light of all the evidence. This witness had testified that Ernest Ritchie had the gun and had taken a shell out of it. It seems to us that the question was wholly immaterial and irrelevant, and in no manner prejudicial to Williams' substantial rights. The Commonwealth's attorney put several questions to Williams on cross-examination to the effect that he would not have fallen over the cliff if he had run around the mountain, and also that he would not have been afraid of just one boy by himself. We have examined the record carefully and are of the opinion that the method employed by the Commonwealth's attorney in cross-examining Williams was not prejudicial to his substantial rights. Williams told his story of self-defense and stuck to it, and as we have indicated, it was for the jury to determine whether his version of the killing or that of the Commonwealth should be accepted. There is also objection to a question put to a Commonwealth witness on direct examination as to what the members of the party had been doing from the time they started fox hunting until Eulis was killed. Clearly this question was propounded with the view of tracing the chain of events which took place after the parties started on the fox hunt. We fail to see how it could be deemed prejudicial to Williams' substantial rights.

Finding no error prejudicial to the appellant's substantial rights, the judgment is affirmed.