## Cobb v. Commonwealth.

Oct. 27, 1942.

716

J. H. Asher and A. D. Hall for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Matt Cobb shot and killed Marshall White near Manchester, in Clay County, on Christmas night of 1941. Upon his trial he was found guilty and his punishment fixed at 15 years in the penitentiary. He is urging that the judgment be reversed on the grounds that (1) the verdict of the jury is contrary to the law and the evidence and is the result of bias or passion and prejudice on its part; (2) the court refused to allow the admission of competent evidence; and (3) the court allowed the admission of incompetent evidence.

During Christmas afternoon and evening Cobb, together with Homer Hoskins, Joe Hatfield and Polly Philpot, had been riding around in a car owned and driven by Johnny Hoskins. Shortly before the difficulty arose in which White was killed, the Hoskins car was parked just off of the Hyden road on the road leading toward Barbourville. Another car came along which was owned and driven by Bud Crawford. In the car with Crawford were Oakley Bundy, Oscar Bundy and Marshall White. Someone in the Crawford car recognized Hoskins and spoke to him as they passed. Crawford stopped his car a short distance from the Hoskins car. Hoskins went toward the Crawford car which was backed toward his car. Someone in the Crawford car asked for a cigarette which was furnished him by an occupant of the Hoskins car. White got out of Crawford's car and came back to the Hoskins car wherein Polly Philpot and Cobb were seated. Apparently, there had been some

previous difficulties between White and Cobb because White immediately started up an argument with Cobb and pointed his pistol at him while he was still in the car. During the argument White backed to the rear of the car and Cobb got out of it with his pistol in his hand and went around to the front of it. All the occupants of both cars seem to have left the scene of the difficulty except Johnny Hoskins and Homer Hoskins.

The story for both sides up until the time of the actual shooting is substantially as follows: White was at the rear of the car with his pistol drawn and Cobb was at the front of it with his drawn. The two Hoskins boys seem to have tried to keep the trouble down and finally Cobb said that he did not want to have any trouble and suggested that he and White shake hands and be friends. Shortly thereafter they put up their guns and shook hands. Something was said about the pistols being surrendered to other members of the party and Cobb said something about having a fist fight. He gave his gun to Homer Hoskins and after he had done so White said he did not believe he would give his pistol up.

Cobb's version of the shooting from this point is that, while his gun was still in the hands of Homer Hoskins, White, who had his gun in his right front pocket, grabbed up his pistol; he took his gun from Homer; White dropped his pistol back in his pocket and he put his in a holster under his arm; White walked around in front of him and stood there a few seconds; Homer started to walk to the car; White threw his pistol on him and said, "Matt, God damn you, I am going to kill you"; he jumped behind Homer as he started toward the car only to draw his pistol and then jumped from behind him and shot White three times; White had his pistol pointed at him in his right hand; and as White pitched forward after being hit he grabbed his pistol in order to keep White from shooting him.

The Commonwealth's version of the shooting as told by Johnny Hoskins and Joe Hatfield is that, after White refused to surrender his gun, Cobb took his from Homer and began shooting while White was standing with his hands in his pockets. Hoskins said that he was standing within about two feet of the parties when the shooting started, that if White ever drew his gun he did not see it and that about 10 seconds after the shooting he saw Cobb with White's pistol in his hand. Though this wit-

ness said that he was standing within two feet of the parties and saw the shooting, he was unable to tell how Cobb came in possession of White's pistol. Hatfield also was unable to explain how Cobb came into possession of the pistol.

While there is an element of doubt as to the truthfulness of the Commonwealth's version of the shooting and the circumstances would tend to support Cobb's version of it, we have frequently pointed out that the credibility of witnesses is for the jury. Combs v. Commonwealth, 284 Ky. 546, 145 S. W. (2d) 36, and cases cited therein. In many cases of this type the evidence for the Commonwealth and for the accused will be substantially the same up to a critical point, yet eye witnesses will give sharply conflicting accounts of the actual killing. In such cases we have held generally that it is within the peculiar province of the jury to weigh the evidence and draw its conclusions therefrom.

The second complaint is directed to the refusal of the court to permit Cobb to testify that White had drawn his gun on him on two previous occasions. There is in the record, however, Cobb's statement that he had had previous difficulties with White. This testimony placed before the jury the gist of what Cobb was trying to get before them, namely, that bad feeling existed between him and White.

The alleged incompetent evidence relates to the testimony of Joe Hatfield. Hatfield was some 17 years of age at the time he testified. We gather from the record that he appeared to be a small, underprivileged boy, who was referred to by the court as something of an outcast. We have read all of his evidence carefully, however, and we are convinced that he had sufficient mentality to give his version of what transpired before and at the time of the killing. This witness said that Cobb had raped Polly Philpot before the trouble began. It is insisted that this was highly prejudicial because it permitted evidence about the commission of an offense not connected with the one with which Cobb was charged. It is obvious from the record, as well as from the statement made by the trial court to the jury, that Hatfield was referring to sexual intercourse rather than rape. Aside from this, we fail to see how the scattered testimony as to what the parties were doing while the Hoskins car was parked and before the Crawford car came up and immediately there-

after, which testimony involved Polly Philpot, could be said to be prejudicial to Cobb's substantial rights. The Commonwealth was attempting to bring out the facts and circumstances having to do with the conduct of the parties just prior to the time of the killing.

It follows from what has been said that it is our view that the judgment should be and it is affirmed.